01

02

03

04

05

06

07                          UNITED STATES DISTRICT COURT
                           WESTERN DISTRICT OF WASHINGTON
08                                    AT SEATTLE

09   GARY LEE ALEXANDER,              )      CASE NO. C12-1326-TSZ-MAT
                                      )
10           Plaintiff,               )
                                      )
11       v.                           )      REPORT AND RECOMMENDATION
                                      )      RE: SOCIAL SECURITY DISABILITY
12   CAROLYN W. COLVIN, Acting        )      APPEAL
     Commissioner of Social Security,[1] )
13                                    )
             Defendant.               )
14   _____ )

15           Plaintiff Gary Lee Alexander proceeds through counsel in his appeal of a final decision

16   of the Commissioner of the Social Security Administration (Commissioner).   The

17   Commissioner denied plaintiff's application for Disability Insurance Benefits (DIB) after a

18   hearing before an Administrative Law Judge (ALJ).   Having considered the ALJ's decision,

19   the administrative record (AR), and all memoranda of record, the Court recommends that this

20   matter be REMANDED for a determination as to the onset date of disability.

21   _____

22           1 Carolyn W. Colvin, Acting Commissioner of Social Security, is substituted as defendant in
     this suit.   Fed. R. Civ. P. 25(d)(1).

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -1

01 <u>**FACTS AND PROCEDURAL HISTORY**</u>

02 Plaintiff was born on XXXX, 1959.[2]  He attended school through the eighth grade and

03 later obtained his GED.  (AR 73, 723.)  Plaintiff previously worked as a carpenter and truck

04 driver.  (AR 736-37, 749-50.)

05 Plaintiff filed applications for SSI and DIB in August 2005, alleging disability since

06 May 31, 2004.  (AR 320-22, 397-99.)  His applications were denied initially and on

07 reconsideration, and he timely requested a hearing.  ALJ M.J. Adams held a hearing on

08 September 19, 2007, taking testimony from plaintiff and a vocational expert (VE).  (AR

09 718-55.)  On November 21, 2007, the ALJ rendered a decision finding plaintiff not disabled.

10 (AR 341-54.)

11 By Order dated May 28, 2010, the Appeals Council vacated the ALJ's decision and

12 remanded for a new hearing.  (AR 335-37.)  The Appeals Council identified deficiencies

13 relating to the assessment of medical opinions, plaintiff's mental impairments, and plaintiff's

14 credibility.  (AR 335-36.)  The ALJ was directed to: (1) re-evaluate plaintiff's residual

15 functional capacity (RFC) and medical opinion evidence; (2) obtain additional evidence,

16 including, if warranted and available, mental status and neurological examinations; (3) further

17 evaluate plaintiff's mental impairments; (4) further evaluate plaintiff's subjective complaints;

18 (5) obtain evidence from a psychiatric medical expert, if available, to clarify the nature and

19 severity of plaintiff's impairments; and (6) if warranted, obtain supplemental evidence from a

20 VE.  (AR 336-37.)

21 _____

22     2 Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

01      On February 8, 2011, the ALJ held a second hearing, taking testimony from plaintiff

02  and a VE.   (AR 756-79.)   On March 7, 2011, the ALJ rendered a partially favorable decision.

03  (AR 21-34.)   Plaintiff remained insured for DIB through June 30, 2008 (*see* AR 21) and,

04  therefore, was required to establish disability on or prior to that "date last insured" (DLI).   *See*

05  20 C.F.R. §§ 404.131, 404.321.   The ALJ found plaintiff disabled as of May 24, 2009, the date

06  he attained the age of fifty, through the date of the decision, but not disabled prior to that date.

07  (AR 32-33.)   Plaintiff was, therefore, entitled only to SSI beginning on May 24, 2009.   (*Id.*)

08      Plaintiff again timely appealed.   The Appeals Council denied plaintiff's request for

09  review on June 21, 2012 (AR 8-10), making the ALJ's decision the final decision of the

10  Commissioner.   Plaintiff appealed this final decision of the Commissioner to this Court.

11  **JURISDICTION**

12      The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

13  **DISCUSSION**

14      The Commissioner follows a five-step sequential evaluation process for determining

15  whether a claimant is disabled.   *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).   At step one, it

16  must be determined whether the claimant is gainfully employed.   The ALJ found plaintiff had

17  not engaged in substantial gainful activity since May 31, 2004, the alleged onset date.

18      At step two, it must be determined whether a claimant suffers from a severe impairment.

19  The ALJ found plaintiff's hepatitis C, lumbar and cervical spine pain with degenerative joint

20  disease and degenerative disc disease, and drug use severe.   He found two physical

21  impairments not severe, and found a number of mental impairments not severe before May 24,

22  2009, the established onset date of disability.

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -3

01      Step three asks whether a claimant's impairments meet or equal a listed impairment.

02 The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

03      If a claimant's impairments do not meet or equal a listing, the Commissioner must

04 assess RFC and determine at step four whether the claimant has demonstrated an inability to

05 perform past relevant work.   The ALJ found plaintiff had the RFC to perform a full range of

06 sedentary work, with the following limitations:   he can understand, remember, and carry out

07 simple one-to-two step instructions required of jobs classified at a level of SVP 1 and 2 or

08 unskilled work; he would have an average ability to perform sustained work activities in an

09 ordinary work setting on a regular and continuing basis, within customary tolerances of

10 employers rules regarding sick leave and absence; he can make judgments on simple

11 work-related decisions, can respond appropriately to supervision and co-workers, and deal with

12 changes, all within a stable work environment; and he cannot deal with the public as in a sales

13 position or where the general public is frequently encountered as an essential element of the

14 work process, but incidental contact with the general public is not precluded.   With that RFC,

15 the ALJ found plaintiff unable to perform any past relevant work.

16      If a claimant demonstrates an inability to perform past relevant work, the burden shifts

17 to the Commissioner to demonstrate at step five that the claimant retains the capacity to make

18 an adjustment to work that exists in significant levels in the national economy.   The ALJ noted

19 plaintiff's age category changed on May 24, 2009, when he attained the age of fifty, and

20 became an individual closely approaching advanced age. Considering the Medical-Vocational

21 Guidelines and the VE testimony, the ALJ concluded that – prior to May 24, 2009 – jobs existed

22 in significant numbers in the national economy plaintiff could perform.   However, beginning

01   on May 24, 2009, there were not jobs existing in significant numbers in the national economy

02   plaintiff could perform.  The ALJ, therefore, concluded plaintiff was not under a disability

03   prior to May 24, 2009, but became disabled on that date and continued to be disabled through

04   the date of the decision.  He was, therefore, entitled to SSI benefits beginning on May 24,

05   2009, but not to DIB benefits given the failure to demonstrate disability prior to his DLI of June

06   30, 2008.

07       This Court's review of the ALJ's decision is limited to whether the decision is in

08   accordance with the law and the findings supported by substantial evidence in the record as a

09   whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).   Substantial evidence means

10   more than a scintilla, but less than a preponderance; it means such relevant evidence as a

11   reasonable mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881

12   F.2d 747, 750 (9th Cir. 1989).   If there is more than one rational interpretation, one of which

13   supports the ALJ's decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278

14   F.3d 947, 954 (9th Cir. 2002).

15       Plaintiff argues the ALJ failed to comply with the Appeals Council's remand order in

16   numerous respects, and erred in assessing his mental impairments at steps two and three, and in

17   assessing his credibility and RFC.  He requests remand for an award of benefits or, in the

18   alternative, for further administrative proceedings.   The Commissioner argues the ALJ's

19   decision is supported by substantial evidence and should be affirmed.

20       <u>Mental Impairments</u>

21       In considering plaintiff's mental impairments, the ALJ found only plaintiff's drug use

22   severe.  He stated:

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -5

01        After the established onset date, the claimant was diagnosed with mental
       conditions at several one-time DSHS evaluations.  For example, Susan
02     Hakeman, Ph.D., diagnosed "PTSD vs. intermittent explosive disorder,
       childhood onset" and Ellen Walker Lind, Ph.D., diagnosed "major depression,
03     recurrent, mild."  However, both psychologist [sic] had indicated that they had
       not reviewed any of the claimant's medical record, and their respective DSHS
04     reports did not indicate any psychological testing was administered.  Even if
       Dr. Hakeman's and Dr. Lind's opinions of significant mental limitations were to
05     be fully credited, they are a reflection of the claimant's limitations after the
       established onset date, when he is found to be disabled under the Medical
06     Vocational Rule 201.14 after he reached age 50.

07        The state-agency consultant, Cynthia Collingwood, Ph.D., noted the diagnosis
       of adjustment disorder, anger outbursts, from record review on February 6,
08     2010.  The consultative examiner, Christopher Noell, M.D., diagnosed chronic
       PTSD, mood disorder, and antisocial personality traits on August 2, 2007, but
09     also recorded that the claimant's last use of marijuana was "a month ago."  The
       claimant also reported that he had used marijuana since age 13.

10

11        After the established onset date, Sylvia Thorpe, Ph.D., diagnosed borderline
       intellectual functioning and antisocial personality disorder at a consultative
12     exam on August 24, 2010.  However, these diagnoses were based on low test
       scores, including a full-scale IQ score of 70, while the claimant was under the
13     effects of medically prescribed Methadone, valium, and marijuana.  Borderline
       intellectual functioning and antisocial personality disorder, even if established
14     as severe impairments, were diagnosed after the established onset date, when the
       claimant is found disabled.  The treatment record does not reflect that the
15     claimant had these diagnoses before the established onset date.

16  (AR 25, internal citations to record omitted.)

17        At step three, the ALJ stated that while he did not find some of plaintiff's mental

18  impairments severe, he nevertheless considered that plaintiff failed to meet the criteria for

19  Listing 12.05 (Mental Retardation), Listing 12.08 (Personality Disorders), and Listing 12.09

20  (Substance Addiction Disorders).  (AR 26.)  He thereafter stated:  "In activities of daily

21  living, the claimant's restrictions were 'mild' . . . ; 'moderate' in social functioning; 'moderate'

22  in concentration, persistence and pace; and the record does not support a conclusion that he had

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -6

01   experienced any repeated episode of decompensation, each of extended duration."   (*Id.*)

02          Plaintiff avers the ALJ failed to comply with the Appeals Council's remand order.   For

03   example, the Appeals Council found the ALJ's prior decision provided "inadequate rationale"

04   to find plaintiff did not have a severe mental impairment, and noted the absence of any

05   "reference to the evidence of record to support the mild ratings of functioning for the mental

06   impairment evaluation."   (AR 335.)   The Appeals Council directed the ALJ to further

07   evaluate plaintiff's mental impairments in accordance with the special technique described in

08   20 C.F.R. §§ 404.1520a and 416.920a, "documenting application of the technique in the

09   decision by providing specific findings and appropriate rationale for each of the functional

10   areas described in [20 C.F.R. §§ 404.1520a(c) and 416.920a(c)].   (AR 336.)   The Appeals

11   Council also directed the ALJ to obtain additional evidence, including examinations, "if

12   warranted and available," and to "[o]btain evidence from a psychiatric medical expert, if

13   available, to clarify the nature and severity of the claimant's impairments[.]"   (*Id.*)

14          Plaintiff also generally maintains the ALJ failed to properly evaluate his mental

15   impairments, erred in finding an absence of support for severe mental impairments prior to the

16   DLI, and rendered a step two conclusion contrary to his own step three finding, wherein he

17   found at least some of plaintiff's impairments resulted in moderate limitations in functioning.

18   He denies these errors were harmless, noting, for example, the ALJ's failure to consider all of

19   his severe mental impairments at step three, and that the RFC assessment did not include all of

20   the relevant limitations associated with those impairments.[3]

21   _____

22          3 Plaintiff also contends the ALJ limited his step three consideration to his mental functioning
     after the established onset date in May 2009.   (Dkt. 24 at 2.)   However, the ALJ concluded plaintiff did

01      The Commissioner denies any error in the application of the special technique, and

02  contends the absence of severity findings at step two is immaterial because the ALJ continued

03  to analyze plaintiff's mental impairments at step three, and included numerous non-exertional

04  limitations in the RFC.   She also notes that the ALJ adopted and incorporated by reference the

05  analysis from the November 2007 decision where consistent with the findings in the decision

06  and left undisturbed by the Appeals Council's remand order.   (AR 30.)

07  A.      Standards Governing Step Two and Step Three

08      At step two, a claimant must make a threshold showing that her medically determinable

09  impairments significantly limit her ability to perform basic work activities.   *See Bowen v.*

10  *Yuckert*, 482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c).   "Basic work

11  activities" refers to "the abilities and aptitudes necessary to do most jobs."   20 C.F.R. §§

12  404.1521(b), 416.921(b).   "An impairment or combination of impairments can be found 'not

13  severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal

14  effect on an individual's ability to work.'"   *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.

15  1996) (quoting Social Security Ruling (SSR) 85-28).   "[T]he step two inquiry is a de minimis

16  screening device to dispose of groundless claims."   *Id.* (citing *Bowen*, 482 U.S. at 153-54).

17  An ALJ is also required to consider the "combined effect" of an individual's impairments in

18  considering severity.   *Id.*   A diagnosis alone is not sufficient to establish a severe impairment.

19  Instead, a claimant must show that his medically determinable impairments are severe.   §§

20  404.1520(c), 416.920(c).

21      Upon identification of a colorable claim of mental impairment, an ALJ must apply a

22  _____

not meet or equal a listing "[s]ince the alleged onset date of disability, May 31, 2004[.]"   (AR 25.)

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -8

"special technique[.]"   §§ 404.1520a(a), 416.920a(a); *Gutierrez v. Apfel*, 199 F.3d 1048, 1051 (9th Cir. 2002), and *Keyser v. Comm'r, Soc. Sec. Admin.*, 648 F.3d 721, 725-26 (9th Cir. 2011). An ALJ's decision must include a specific finding as to the degree of mental limitation in each of four broad functional areas: activities of daily living; social functioning; concentration, persistence and pace; and episodes of decompensation.   §§ 404.1520a(c), (e); 416.920a(c), (e).

At step three, the ALJ must consider whether the claimant's impairments meet or equal one of the impairments in the "Listing of Impairments" set forth in Appendix 1 to 20 C.F.R. Part 404, Subpart P.   "In evaluating a claimant with more than one impairment, the Commissioner must consider 'whether the combination of your impairments is medically equal to any listed impairment.'" *Lester v. Chater*, 81 F.3d 821, 829 (9th Cir. 1996).   Plaintiff bears the burden of proving the existence of impairments meeting or equaling a listing.   *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

B.   Errors in Consideration of Mental Impairments

In this case, the ALJ either failed to consider or failed to adequately consider a number of medical opinions in finding an absence of evidence to support the existence of a severe mental impairment prior to the DLI.   As a general principle, an ALJ's error may be deemed harmless where it is "'inconsequential to the ultimate nondisability determination.'" *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted).   The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.   Errors at step two may be deemed harmless where the ALJ adequately accounts for impairments at subsequent steps.   *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (failure to list an impairment as severe at step two can be deemed harmless where limitations are considered at

01  step four); *Burch*, 400 F.3d at 682-84 (finding failure to list obesity as severe at step two

02  harmless where ALJ considered any functional limitations imposed by obesity at all subsequent

03  steps of the analysis).   Here, for the reasons described below, the ALJ's errors may not be

04  deemed harmless.[4]

05      1.   Dr. Kevin Zvilna:

06      In an April 2007 intake assessment, Dr. Kevin Zvilna diagnosed plaintiff with bipolar I,

07  depressed, moderate, rule-out anxiety disorder, and antisocial personality disorder, rule-out

08  paranoid personality disorder.   (AR 193-200.)   Dr. Zvilna assessed a Global Assessment of

09  Functioning (GAF) of 40, indicating "some impairment in reality testing or communication" or

10  "major impairment in several areas, such as work or school family relations, judgment, thinking

11  or mood[.]"   Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000)

12  (DSM-IV-TR).   He described plaintiff as appearing "agitated and depressed" and attached a

13  Mental Status Examination (MSE), noting, *inter alia*, plaintiff's poor hygiene, aggressive and

14  paranoid thought process, depressed mood/affect, limited ability to abstract in cognitive

15  functioning, agitated motor activity, impaired insight/judgment (denial/resistance, blames

16  others, aware of problem, poor impulse control), guarded behavior, and pressured speech with

17  ――――――――――――
18          4 Because plaintiff demonstrates non-harmless error beginning at step two, the Court does not
    consider whether the ALJ failed to comply with the Appeals Council's remand order, or the implications
    of any such failure.   The Court also notes that it may not remand for an award of benefits based solely
19  on an ALJ's failure to comply with a remand order from the Appeals Council.   *Strauss v. Commissioner
    of the Social Sec. Admin.*, 635 F.3d 1135, 1137-38 (9th Cir. 2011) ("The ALJ's errors are relevant only
    as they affect that analysis on the merits. A claimant is not entitled to benefits under the statute unless the
20  claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be.") (cited case omitted).
    *Cf. Taylor v. Commissioner of Social Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011) ("When the
    Appeals Council denies a request for review, it is a non-final agency action not subject to judicial review
21  because the ALJ's decision becomes the final decision of the Commissioner.")   *But see* 20 C.F.R. §
    404.977(b) ("The [ALJ] shall take any action that is ordered by the Appeals Council and may take any
22  additional action that is not inconsistent with the Appeals Council's remand order.")

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -10

01   preservations.   (AR 193, 198.)

02        The existence of Dr. Zvilna's April 2007 diagnosis of an antisocial personality disorder

03   directly undermines the ALJ's conclusion that the record did not reflect plaintiff had this

04   diagnosis before the established onset date.   Nor did the ALJ consider any mood or affective

05   disorder (such as bipolar I) under Listing 12.04 at step three, or in any respect address Dr.

06   Zvilna's report in the 2011 decision.   While the ALJ did address Dr. Zvilna's report in the 2007

07   decision, the consideration of this evidence was inadequate for the reasons discussed below.

08   The ALJ's failure to consider the evidence from Dr. Zvilna cannot be deemed harmless.

09        2.   Dr. Ellen Walker Lind:

10        The ALJ also failed to consider evidence from Dr. Ellen Walker Lind.   In a January

11   2008 evaluation, Dr. Lind diagnosed plaintiff with intermittent explosive disorder, panic

12   disorder without agoraphobia, and polysubstance dependence in sustained full remission,

13   assessed numerous marked and severe limitations, and found plaintiff chronically mentally ill.

14   (AR 421-26.)   In an attached MSE, Dr. Lind noted, *inter alia*, poor grooming, agitation, and

15   poor remote and recent memory.   (AR 425-26.)   Dr. Lind again evaluated plaintiff in

16   November 2008, diagnosing plaintiff with intermittent explosive disorder, assessing numerous

17   marked and severe limitations in functioning, and finding plaintiff chronically mentally ill.

18   (AR 415-20.)   The attached MSE noted, *inter alia*, evidence of agitation, irritability, and

19   impaired recent memory.   (AR 419-20.)   This latter evaluation remains relevant despite the

20   fact that it is dated some five months after the DLI.   *Lester*, 81 F.3d at 832 ("'[M]edical

21   evaluations made after the expiration of a claimant's insured status are relevant to an evaluation

22   of the preexpiration condition.'") (quoting *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir.

01  1988).)   In both 2008 evaluations, Dr. Lind noted marked and severe limitations, including in

02  plaintiff's ability to learn new tasks, exercise judgment and make decisions, perform routine

03  tasks, relate appropriately to co-workers and supervisors, tolerate the pressures and

04  expectations of a normal work setting, to care for himself, including personal hygiene and

05  appearance, and to control physical or motor movements and maintain appropriate behavior.

06  (AR 417, 423.)

07        Again, the failure to consider this evidence cannot be deemed harmless.   The ALJ did

08  not consider any anxiety disorder (such as panic disorder) under Listing 12.06 at step three, and

09  did not ever assess the two 2008 evaluations completed by Dr. Lind.   He, instead, only

10  considered an evaluation completed by Dr. Lind in July 2010.   (AR 25, 30, 627-32.)

11  However, as discussed below, the consideration of the 2010 evaluation alone was not sufficient.

12  3.    Dr. Christopher Noell:

13        The ALJ did address opinion evidence from Dr. Christopher Noell.   In August 2007,

14  Dr. Noell described plaintiff as irritable and angry on examination, diagnosed chronic PTSD,

15  mood disorder, not otherwise specified (NOS), and antisocial personality traits, and opined that

16  plaintiff's "anger and irritability present a significant barrier to treatment as well as

17  diagnosis[,]" and that it was "most likely that [he] is reactive to stresses and perceived insults,

18  developing depressive reaction and anger discontrol."   (AR 305-06.)   Dr. Noell assessed a

19  GAF of 45, indicating "serious symptoms" or "any serious impairment in social, occupational,

20  or school functioning."   DSM-IV-TR 34.

21        The ALJ acknowledged the evidence from Dr. Noell at step two, but noted Dr. Noell

22  recorded plaintiff's last use of marijuana as "'a month ago[,]'" as well as plaintiff's report "that

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -12

01  he had used marijuana since age 13." (AR 25.)  As discussed below, the ALJ did not

02  adequately address plaintiff's substance use as a general matter.  Nor did the ALJ

03  appropriately disregard the evidence from Dr. Noell at step two based solely on the inclusion of

04  the observations as to plaintiff's use of marijuana.

05       The ALJ also did not assess any mood or anxiety disorders, including PTSD, at step

06  three.  Moreover, Dr. Noell's assessment of antisocial personality traits, when considered in

07  conjunction with the antisocial personality disorder diagnosis of Dr. Zvilna, further undermines

08  the ALJ's assertion as to an absence of a personality disorder diagnosis prior to the established

09  onset date.  The ALJ additionally, as discussed below, failed to adequately support the

10  conclusion in his 2007 decision for rejecting the GAF score assigned by Dr. Noell.

11  Accordingly, the ALJ's failure to adequately consider the evidence from Dr. Noell at step two

12  cannot be deemed harmless.

13       4.    Dr. Douglas Uhl:

14       The record also contains other evidence predating plaintiff's DLI and addressed only

15  later in the ALJ's decision.  In January 2007, Dr. Douglas Uhl diagnosed mental impairments,

16  including pain disorder, major depression, and cocaine dependence in remission, found

17  moderate, marked, and severe limitations,[5] included MSE observations, and deemed plaintiff

18  acutely mentally ill.  (AR 201-08.)  In August 2007, Dr. Uhl completed written

19  interrogatories reflecting plaintiff met listing level severity for an affective disorder, Listing

20  _____

21       5 Dr. Uhl assessed marked limitations in the ability to exercise judgment and make decisions, to
     relate appropriately with coworkers and supervisors, to care for himself, including personal hygiene and
     appearance, and to control physical or motor movements and maintain appropriate behavior, and a

22  severe limitation in responding appropriately to and tolerating the pressures and expectations of a
     normal work setting.  (AR 26, 203.)

01  12.04, assessing extreme limitations in activities of daily living and social functioning, constant

02  deficiencies of concentration, persistence, or pace, and frequent repeated episodes of

03  decompensation.  (AR 307-09.)  Dr. Uhl pointed to his January 2007 assessment as support

04  for this opinion, and opined plaintiff's drug and alcohol use was not a factor material to

05  disability.  (AR 309-11.)

06       The ALJ provided several reasons for according little weight to Dr. Uhl's opinions.

07  (AR 29.)   However, even if that assessment is considered sufficient, the evidence from Dr. Uhl

08  undermines the ALJ's step two conclusion as to an absence of evidence supporting the

09  existence of severe mental impairments prior to the DLI.   In particular, it is noted that the ALJ

10  did not assess either a somatoform disorder (such as pain disorder) or a mood disorder (such as

11  major depression) at step three, both of which were assessed by Dr. Uhl.

12       5.   Dr. David Hansen:

13       Dr. David Hansen also completed written interrogatories in August, 2007.  (AR

14  299-301.)  Dr. Hansen opined that plaintiff met listing level severity for an affective disorder,

15  Listing 12.04, and assessed moderate limitations in activities of daily living and maintaining

16  social functioning, frequent deficiencies in concentration, persistence, or pace, and repeated

17  episodes of decompensation occurring "often[.]"   (AR 299-301.)   He stated the basis for his

18  opinion as follows:   "Depression Major Recurrent with anger management problems.   Failed

19  multiple SSRI." (AR 301.)   Dr. Hansen also opined that plaintiff's drug and alcohol use was

20  not a factor material to disability.   (AR 304.)

21       Again, the ALJ did not assess any affective or mood disorder at step three.  He did

22  assess limitations in the special technique consistent, in part, with the limitations assessed by

01  Dr. Hansen and otherwise considered Dr. Hansen's opinions at step four.  (AR 28.)  Yet, as

02  with Dr. Uhl, the evidence from Dr. Hansen undermines the ALJ's step two conclusion as to an

03  absence of evidence supporting the existence of severe mental impairments prior to the DLI.

04      6.    Mike Gregory, ARNP, and Phillip Tageant, MSW:

05      Finally, the record contained evidence from Mike Gregory, ARNP, and Phillip Tageant,

06  MSW, relevant to the consideration of plaintiff's mental impairments prior to the DLI.  The

07  records include Gregory's treatment notes (AR 209-12, 515-588, 593-98), and the 2009 opinion

08  that plaintiff's PTSD severely limited his functioning (AR 614).  Tageant, in August 2007

09  written interrogatories, opined that plaintiff met listing level severity for a personality disorder,

10  Listing 12.08, and that drug and alcohol use was not a factor material to disability.  (AR

11  316-19.)  Again, the existence of yet more evidence supporting the existence of mental

12  impairments prior to the DLI supports a finding of error in the ALJ's step two determination.

13  C.    Impact of Errors

14      As described above, the ALJ erred at step two in failing to consider evidence clearly

15  relevant to that determination, and that error implicated both the application of the special

16  technique and the consideration of plaintiff's claim at step three.  The mere fact that the ALJ

17  identified and analyzed other severe mental impairments at steps two and three does not render

18  the omission of separate severe mental impairments harmless.  In fact, the Ninth Circuit has

19  found otherwise.  *See Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012) ("Because the ALJ

20  excluded panic disorder from Hill's list of impairments and instead characterized her diagnosis

21  as anxiety alone, the [RFC] determination was incomplete, flawed, and not supported by

22  substantial evidence in the record.")

01          Nor can it be said that the ALJ rectified his errors by considering all relevant limitations

02   at step four.   Plaintiff notes, as one example, that the ALJ failed to take into consideration

03   assessed limitations in his ability to interact with co-workers and supervisors, and, in fact,

04   found no limitations in this regard.   (AR 26.)

05          The Commissioner asserts "the ALJ reasonably concluded Plaintiff's anger was under

06   control with medication based on his testimony at the February 2011 administrative hearing."

07   (Dkt. 22 at 9 (citing AR 27).)   However, the ALJ did not reach any such conclusion.   The

08   Court reviews the ALJ's decision "based on the reasoning and factual findings offered by the

09   ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been

10   thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225 (9th Cir. 2009) (citing, *inter alia*, *Snell*

11   *v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) ("The requirement of reason-giving exists, in part, to

12   let claimants understand the disposition of their cases…")).   Nor is the Commissioner's

13   reading of the ALJ's decision reasonable.   The ALJ did note plaintiff's testimony that

14   "medical marijuana helped suppress his anger[.]"   (AR 27.)   However, as the ALJ observed,

15   plaintiff went on to testify that "he still had 'problems interacting with people,' had 'no

16   tolerance for people,' and felt threatened by them."   (*Id*.)   The ALJ further described

17   plaintiff's testimony "that he had no friends and that he did not come out of the house except for

18   grocery shopping[,]" and his testimony in the 2007 hearing "that he had lost prior jobs because

19   of 'fist fights with co-workers' and not getting along with his employers."   (*Id*.)

20          The impact of the errors beginning at step two also implicate step five.   For example, at

21   hearing, plaintiff's counsel asked the VE whether his response to the hypothetical proffered by

22   the ALJ would change if a limitation of an inability to respond appropriately to co-workers and

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -16

01  supervisors were added, such as where an individual had "anger problems or personality issues

02  that would cause frequent disputes or difficulties with co-workers and supervisors."  (AR 777.)

03  The VE responded that, if a constant factor in the work place over time, such a factor "would

04  probably result in termination."  (*Id.*)

05      In sum, the ALJ erred in his consideration of plaintiff's mental impairments at steps two

06  and three, and those errors may not be deemed harmless.   The ALJ's consideration of

07  plaintiff's mental impairments lacks the support of substantial evidence and implicates the

08  remainder of the ALJ's decision.

09                          Medical Opinions

10      In general, more weight should be given to the opinion of a treating physician than to a

11  non-treating physician, and more weight to the opinion of an examining physician than to a

12  non-examining physician.  *Lester*, 81 F.3d at 830.   An ALJ must provide clear and convincing

13  reasons for rejecting uncontradicted opinion evidence from these "acceptable medical sources,"

14  and specific and legitimate reasons for rejecting contradicted opinion evidence.  *Id*.   The ALJ

15  must also address the opinions of "other sources," such as nurse practitioners and therapists,

16  and may discount such evidence by providing reasons germane to each source.  *Molina*, 674

17  F.3d at 1111 (citing *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) and

18  *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)).  *See also* SSR 06-03p.

19      Plaintiff argues the ALJ failed to give legally sufficient and supported rationale to

20  disregard opinion evidence of numerous examining and treating providers, including Drs.

21  Zvilna, Lind, Noell, Uhl, and Hansen, and the evidence proffered by other source providers

22  Gregory and Tangent.   The Commissioner contends the ALJ's assessment of this evidence was

01  based on substantial evidence and free of harmful error.

02        This case is notable in that all of the opinion evidence can be described as supportive of

03  plaintiff's claim.   In this respect, it is noted that Dr. Cynthia Collingwood, a Stage agency

04  consultant, noted plaintiff had been diagnosed with an affective disorder, "adjustment

05  [disorder]; anger outbursts[,]" but did not assess functional limitations upon finding

06  "insufficient" medical evidence of record.  (AR 481-93.)   The ALJ also rejected evidence

07  supportive of plaintiff's claim from examining physicians Dr. Susan Hakeman (AR 633-38),

08  Dr. Sylvia Thorpe (AR 605-11), and Dr. Trula Thompson (AR 287).   (AR 25, 28-30.)

09  Therefore, the ALJ was required to provide clear and convincing reasons for the rejection of the

10  physicians' opinions.   However, as described below, the ALJ failed to provide such reasons in

11  relation to several physicians.

12  A.       Drs. Zvilna, Lind, and Noell

13        In addressing the evidence from Dr. Zvilna in the 2007 decision, the ALJ noted only that

14  the assessed GAF of 40 "appears to be inconsistent with consideration of the objective evidence

15  versus subjective allegations as well as the record as a whole."  (AR 350.)   The ALJ did not

16  cite to any inconsistent objective evidence, and failed to acknowledge Dr. Zvilna's objective

17  observations.   (*See* AR 193, 198.)   Also, while the Commissioner correctly observes that the

18  ALJ cited to Dr. Zvilna's report in relying on plaintiff's "long" and "significant" criminal

19  history in the credibility assessment (AR 28), there is no basis for inferring that the ALJ relied

20  on this reasoning to discount Dr. Zvilna's opinions.   The ALJ cited to that evidence in the 2011

21  decision, wherein he did not discuss the evidence from Dr. Zvilna.   Nor is it apparent that the

22  evidence of plaintiff's criminal history would serve to reject Dr. Zvilna's opinions.   Indeed,

01  Dr. Zvilna rendered his opinions with full knowledge of that history.  The ALJ, therefore,

02  failed to provide clear and convincing reasons for the rejection of the opinions of Dr. Zvilna.

03  Nor did the ALJ provide clear and convincing reasons for rejecting the opinion evidence

04  from Dr. Lind.  The ALJ did accurately note inconsistencies between Dr. Lind's July 2010

05  evaluation and evidence in the record relating to plaintiff's work history.  (AR 30, 627-32

06  (ALJ found Dr. Lind's observation that plaintiff had not worked "for almost 10 years now" and

07  his diagnosis of major depression, recurrent, mild with an onset date in 1980 inconsistent with

08  evidence of plaintiff's gainful work history).)  However, Dr. Lind's two earlier evaluations did

09  not suffer from the defects identified by the ALJ.  (*See* AR 415-26 (stating, at most, that

10  plaintiff "hasn't worked for years" and noting plaintiff worked as trucker for eight years)).

11  While a physician's most recent opinions may be "highly probative[,]" *Osenbrock v. Apfel*, 240

12  F.3d 1157, 1165 (9th Cir. 2001), the inconsistencies highlighted by the ALJ do not apply to or

13  otherwise suffice to reject the earlier evaluations from Dr. Lind.

14  Likewise, the ALJ failed to provide clear and convincing reasons for rejecting the

15  opinions of Dr. Noell.   In the 2011 decision, the ALJ no more than noted the information in Dr.

16  Noell's report relating to marijuana.  (AR 25.)   In the 2007 decision, the ALJ stated only that

17  the assessed GAF appeared "inconsistent with the objective narrative findings versus subjective

18  allegations as well as the objective evidence of record as a whole."  (AR 351.)  However, as

19  with Dr. Zvilna, the ALJ failed to cite any contrary objective evidence or to take into account

20  the objective observations as to plaintiff's anger and irritability on examination.   (AR 305-06.)

21  B.    Other Opinion Evidence

22  The ALJ addressed the opinions of Drs. Uhl and Hansen in greater detail.   He found

01  treating physician Dr. Hansen appeared to have underestimated the effects of plaintiff's drug

02  use, that plaintiff's legal history eroded his credibility so as to cast doubt on his presentation to

03  this physician, and that Dr. Hansen failed to provide any support for the conclusion that plaintiff

04  had often experienced repeated episodes of decompensation.   (AR 28.)   He further noted that

05  the opinion as to whether an individual is "disabled" is an issue reserved to the Commissioner.

06  (AR 28-29.)   The ALJ stated Dr. Uhl's interrogatory was a "check-the-box" form, and

07  described specific inconsistencies between the opinions on that form and Dr. Uhl's prior, more

08  detailed report, upon which he purported to rely in completing the interrogatories.   (AR 29.)

09  The ALJ also noted that, while finding drug use not a factor material to disability, Dr. Uhl failed

10  to address plaintiff's "longstanding marijuana use[.]"   (*Id.*)

11      The ALJ also addressed the evidence from Gregory and Tageant.   He stated:   "Mr.

12  Gregory also cited 'marked' PTSD as a basis for severely limited functioning, but at the same

13  time, he noted 'polysubstance abuse' as well as use of medical marijuana and Methadone."

14  (AR 28, internal citation to record omitted.)   After describing Tageant's opinion that plaintiff's

15  condition met a listing, the ALJ noted Tageant is not an acceptable medical source.   (AR 30.)

16  He also stated:   "In addition, Dr. Hansen, Dr. Uhl, and Dr. Thompson had expressed similar

17  opinions as Mr. Tageant, but their opinions are accorded little weight for the multiple reasons

18  discussed above."   (*Id.*)   The ALJ, therefore, also accorded Tageant's opinions little weight.

19  (*Id.*)

20      It is not necessary to analyze the reasoning provided in relation to Dr. Uhl, Dr. Hansen,

21  Gregory, and Tageant in detail.   The ALJ's errors beginning at step two call into question the

22  remainder of his analysis.   Also, in addition to the fact that the ALJ failed to provide clear and

01 convincing reasons for rejecting the opinion evidence from three other physicians, it is worth

02 reiterating that the record contains no contradictory medical evidence as to plaintiff's mental

03 impairments.   Moreover, the ALJ's reliance on the issue of plaintiff's substance use in

04 rejecting the medical opinion evidence is problematic for the reasons discussed below.   For all

05 of these reasons, plaintiff demonstrates reversible error in the ALJ's consideration of the

06 medical evidence.

07 <u>Credibility</u>

08    Absent evidence of malingering, an ALJ must provide clear and convincing reasons to

09 reject a claimant's testimony.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)

10 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).  *See also Vertigan v. Halter*,

11 260 F.3d 1044, 1049 (9th Cir. 2001).   "General findings are insufficient; rather, the ALJ must

12 identify what testimony is not credible and what evidence undermines the claimant's

13 complaints."  *Lester*, 81 F.3d at 834.  "In weighing a claimant's credibility, the ALJ may

14 consider his reputation for truthfulness, inconsistencies either in his testimony or between his

15 testimony and his conduct, his daily activities, his work record, and testimony from physicians

16 and third parties concerning the nature, severity, and effect of the symptoms of which he

17 complains."  *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

18    The ALJ concluded that plaintiff's medically determinable impairments could

19 reasonably be expected to cause some of the alleged symptoms, but that plaintiff's statements

20 concerning the intensity, persistence, and limiting effects of those symptoms were not credible

21 prior to May 24, 2009 to the extent inconsistent with the assessed RFC.   (AR 27.)   In addition

22 to the discussion of the medical evidence, the ALJ found:

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -21

01   The claimant has a prescription for marijuana and [Methadone] at 100 mg per
day, but the medical records also referenced a history of IV drug abuse as well as
02   concurrent polysubstance use during the course of treatment.   Drug use,
whether prescribed or not, were [sic] expected to worsen the claimant's
03   psychiatric limitations, on which the providers' opinions were based.   The
claimant also has a long legal history, which includes assaults with deadly
04   weapons resulting in 3 different prison terms totaling at least 8 years; tampering
with state's witness; 2 DUIs for which he owed $30,000 in fines; driving on a
05   suspended license; misdemeanor for marijuana possession; arson; battery;
kidnapping; and armed robbery.   A significant legal history erodes the
06   claimant's credibility.   It is also a contributing factor, unrelated to any medical
impairment, for the claimant's inability to find work.

07

08   (AR 28, internal citations to record omitted.)   While the ALJ provided other reasons for the

09   credibility determination in the 2007 decision, the Appeals Council vacated that portion of the

10   decision.   (*See* AR 335-36.)

11       Plaintiff argues the ALJ's assessment of his credibility related only to his physical

12   issues, which are not relevant herein, and improperly insinuated he is currently abusing drugs.

13   The Commissioner argues that an ALJ may rely on a claimant's felony convictions for crimes

14   of moral turpitude as a part of the credibility determination.   *Albidrez v. Astrue*, 504 F. Supp.

15   2d 814, 822 (C.D. Cal. 2007) (finding it appropriate to consider crimes involving moral

16   turpitude, including a conviction for showing a false ID to a peace officer, and the violent crime

17   of attempted robbery).   *See also generally Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir.

18   1991) (ALJ may rely on "relevant character evidence.")   The Commissioner also points to the

19   ALJ's reliance on plaintiff's substance use in addressing the opinions of various medical

20   providers, and states that plaintiff's representations that he had been clean and sober of illicit

21   drugs were "incredible" given his admitted use of drugs since childhood.   (Dkt. 22 at 18 (citing

22   AR 28).)

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -22

01        Given the extent and nature of plaintiff's criminal history, the ALJ's consideration of

02  this factor can be considered reasonable.   However, the ALJ otherwise failed to sufficiently

03  address plaintiff's credibility.

04        As plaintiff argues, the ALJ implies his use of non-prescribed illegal substances during

05  the relevant time period – asserting his "concurrent polysubstance use during the course of

06  treatment."   (AR 28 (citing AR 151, 305, 524, 526-27, 530, 532, 534, 581, 587, 593, 597, 610,

07  617, 622, 635); *see also* AR 25 ("Even though the claimant is likely in remission status for

08  street drugs, he continues to use medical marijuana."))   However, a review of the record

09  reveals only a remote history of cocaine dependence, in sustained remission (*see*, *e.g.*, AR 148,

10  286), and largely reflects the prescribed use of Methadone and marijuana, with evidence of a

11  marijuana prescription at least as early as October 7, 2008 (*see*, *e.g.*, AR 428, 587)).   At most,

12  therefore, there may have been a period when plaintiff used marijuana without a prescription.

13  (*See* AR 194, 305 (reports dated in 2007 reflecting plaintiff's ongoing marijuana use, without

14  mention of a prescription)).

15        The 2007 decision also noted consideration of alcohol use during the relevant time

16  period.   For instance, the ALJ cited to a May 2007 treatment note stating:   "At his last visit the

17  patient reported continued alcohol use and today reports ongoing use."; and "The patient is

18  again advised to avoid alcohol to prevent further damage from hepatitis C." (AR 34, 290.)

19  However, the ALJ also acknowledged plaintiff's testimony that he stopped drinking in 2002

20  and had five years of sobriety, with the exception of a beer on his birthday, which he maintained

21  explained the May 2007 treatment note.   (AR 34, 727-29.)   (*But see* AR 194-95 (Dr. Zvilna's

22  April 2007 assessment reflects plaintiff's report that he "binges on beer[,]" and "has drinking

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -23

01 binges throughout the month."))

02      The ALJ does not cite to any records in support of his assertion that drug use, whether

03 prescribed or not, was expected to worsen plaintiff's psychiatric limitations.   The

04 Commissioner, arguing in support of this finding, points only to Dr. Thorpe's "cautionary note

05 about interpreting the significance of Plaintiff's test scores given his current use of methadone

06 and marijuana."   (Dkt. 22 at 18 (citing AR 610).)   Yet, even if this is reasonably considered as

07 evidence supporting the ALJ's finding, the record contains numerous opinions of physicians

08 and care providers who opined that plaintiff's substance use was not material to his disability.

09 As stated above, the ALJ failed to sufficiently address that opinion evidence.   The ALJ should

10 have further delved into the issue of plaintiff's substance use in general and, in particular,

11 presented a clearer picture as to the status of plaintiff's substance use during the relevant time

12 period.

13      Finally, the ALJ's consideration of plaintiff's credibility is as a general matter called

14 into question by the other errors in the decision.   For this reason, and for the reasons stated

15 above, plaintiff demonstrates reversible error in the ALJ's consideration of his credibility.

16                                                      RFC

17      Plaintiff argues the deficiency of the RFC given the errors in the ALJ's consideration of

18 his mental impairments.   The Court agrees.   The errors outlined above appear to implicate the

19 sufficiency of the ALJ's RFC assessment as it relates to mental impairments.

20      Plaintiff also argues that the RFC assessment fails to account for physical limitations

21 associated with his knee and upper extremities, pointing to the findings contained in a July 2010

22 report by Dr. Peter Pfeiffer.   (AR 599-604.)   The ALJ addressed Dr. Pfeiffer's report only

01   once, in noting medication kept plaintiff's hypertension under fair control.   (AR 24.)   In any

02   event, Dr. Pfeiffer merely noted "decreased sensation in the skin over the left knee[]" and did

03   not clearly opine as to limitations in, for example, reaching, pushing, or pulling.   (*See* AR

04   601-03.)   Moreover, the evidence from Dr. Pfeiffer falls within the time period in which the

05   ALJ found plaintiff disabled.   Further, the ALJ did address similar, July 2010 evidence from

06   Gregory, noting plaintiff was "less than 3 months status-post cervical diskectomy and fusion" at

07   that time, and concluding plaintiff's "actual physical limitations, after a period of recuperation

08   from the surgery, were expected to be higher."   (AR 28.)   Therefore, any error in the failure to

09   further address Dr. Pfeiffer's report can be deemed harmless.

10                                                      <u>Remand</u>

11           The Court has discretion to remand for further proceedings or to award benefits.   *See*

12   *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).   The Court may direct an award of

13   benefits where "the record has been fully developed and further administrative proceedings

14   would serve no useful purpose."   *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir.

15   2002).

16           Such a circumstance arises when: (1) the ALJ has failed to provide legally
         sufficient reasons for rejecting the claimant's evidence; (2) there are no
17           outstanding issues that must be resolved before a determination of disability can
         be made; and (3) it is clear from the record that the ALJ would be required to
18           find the claimant disabled if he considered the claimant's evidence.

19   *Id*. at 1076-77.

20           Plaintiff requests remand for an award of benefits, with a finding that he was disabled as

21   of his alleged onset date or no later than his DLI.   Alternatively, plaintiff requests remand for

22   consideration of whether he was disabled as of his alleged onset date or by his DLI.

01       The numerous errors in the ALJ's decision, the consistent opinion evidence from the

02   physicians and other care providers, and the apparent existence of substantial evidence support

03   for a finding of severe and substantially limiting mental impairments prior to the DLI argues in

04   favor of a remand for an award of benefits.   Also relevant to this consideration is the fact that

05   plaintiff applied for benefits almost eight years ago, in August 2005.   *See Varney v. Secretary*

06   *of Health and Human Servs*., 859 F.2d 1396, 1398-99 (9th Cir. 1988) (noting claimant had

07   already waited over five years since applying for benefits; "Delaying the payment of benefits by

08   requiring multiple administrative proceedings that are duplicative and unnecessary only serves

09   to cause the applicant further damage -- financial, medical, and emotional.")   *See also Smolen*,

10   80 F.3d at 1292 (noting seven-year delay and additional delay posed by further proceedings);

11   *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985) (noting administrative proceedings would

12   only prolong already lengthy process and delay benefits).

13       However, the onset date of disability is an outstanding issue that must be resolved

14   before a finding of disability can be made.   DIB benefits may be paid for up to twelve months

15   prior to the month in which an application is filed.   SSR 83-20.   Therefore, plaintiff is

16   potentially entitled to DIB beginning in 2004.   While there is considerable evidence

17   supporting an onset date prior to plaintiff's DLI of June 30, 2008, it is not clear such evidence

18   exists and/or supports an award of benefits prior to 2007.   (*See*, *e.g.*, AR 193-200 (Dr. Zvilna's

19   April 2007 intake assessment).)

20       The Ninth Circuit has held that if the "medical evidence is not definite concerning the

21   onset date and medical inferences need to be made, SSR 83-20 requires the administrative law

22   judge to call upon the services of a medical advisor and to obtain all evidence which is available

to make the determination."   *DeLorme v. Sullivan*, 924 F.2d 841, 848 (9th Cir. 1991); *see also*

*Armstrong v. Commissioner of Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th Cir. 1998) ("where a

record is ambiguous as to the onset date of disability, the ALJ must call a medical expert to

assist in determining the onset date"); *Morgan v. Sullivan*, 945 F.2d 1079, 1083 (9th Cir. 1991)

(inferring a disability onset date "is not possible without the assistance of a medical expert").

This matter should be remanded based on the errors addressed above, with indication that

plaintiff demonstrates substantial evidence support for the finding of onset of disability prior to

his DLI, and with direction for the ALJ to determine the onset date of disability.   If the onset

date of disability is not definite, the ALJ must retain the services of a medical expert.   *See id*.

## **CONCLUSION**

For the reasons set forth above, this matter should be REMANDED for determination of

the onset date of disability.

DATED this 22nd day of May, 2013.

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -27